UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | } |
| | } |
| v. | } Case No.: 1:22-cr-84-RDP-NAD-1 |
| | } |
| SANTINI BRYSHAD HUNTER, | } |
| | } |
| Defendant. | } |

## MEMORANDUM OPINION

This matter is before the court on Defendant Santini Bryshad Hunter's Motion to Dismiss the Indictment. (Doc. # 19). The Motion is fully briefed (Docs. # 19, 21, 22) and ripe for review. For the reasons discussed below, the Motion is due to be denied.

**I.     Background**

On March 29, 2022, a Northern District of Alabama grand jury returned an indictment charging Defendant Santini Bryshad Hunter with violating Title 18, United States Code, Section 922(g)(1), which prohibits the possession of a firearm by anyone who has been convicted of a crime punishable by imprisonment for more than one year. 18 U.S.C. § 922(g)(1).[1] Defendant has filed a Motion to Dismiss the Indictment asserting that § 922(g)(1) is unconstitutional under the Second Amendment. (Doc. # 19).

**II.    Legal Standard**

Federal Rule of Criminal Procedure 12 allows a defendant to bring a pretrial motion challenging a criminal indictment. Fed. R. Crim. P. 12(b)(3). A court may dismiss a criminal indictment that is legally insufficient. *See* Fed. R. Crim. P. 12(b)(3)(B); *United States v. Durrett*,

---

[1] On July 28, 2010, Defendant was convicted of Unlawful Distribution of a Controlled Substance in Talladega County Circuit Court, and on May 20, 2010, Defendant was convicted of Unlawful Possession of Marijuana, First Degree, in Talladega County Circuit Court. (Doc. # 1). Both of these are felony offenses, as they involve penalty schemes that subject a defendant to a term of imprisonment exceeding one year. (*Id.*).

524 F. App'x 492, 494 (11th Cir. 2013) (per curiam); *United States v. Schmitz*, 634 F.3d 1247, 1260 (11th Cir. 2011); *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). An indictment is defective if it alleges a violation of an unconstitutional statute. *United States v. Brown*, 715 F. Supp. 2d 688, 689-90 (E.D. Va. 2010); *see The Civil Rights Cases*, 109 U.S. 3, 8-9 (1883).

### III.    Discussion

Defendant moves to dismiss the indictment, arguing that § 922(g)(1) is unconstitutional on its face because it violates the Second Amendment right to keep and bear arms.[2] (Doc. # 19). In *United States v. Rozier*, the Eleventh Circuit considered this very issue and rejected a Second Amendment challenge to § 922(g)(1). 598 F.3d 768 (11th Cir. 2010) (per curiam). The question facing this court today is whether *Rozier* is still good law in light of the Supreme Court's recent ruling in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). After careful review, the court concludes that it is. Because *Rozier* has not been clearly overruled or undermined to the point of abrogation, this court is bound by that decision's holding that § 922(g)(1) does not violate the Second Amendment.

    **A.**    **In *Bruen*, the Supreme Court articulated a new standard for analyzing Second Amendment challenges to firearms regulations.**

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment protects an individual's right to keep and bear arms for the purpose of self-defense.

---

[2] "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The fact that § 922(g)(1) "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid[.]" *Id.*

2

554 U.S. 570 (2008) (per curiam) (striking down a D.C. statute banning handgun possession inside the home). Two years later, in *McDonald v. City of Chicago*, the Court held that the Fourteenth Amendment's Due Process clause incorporates the Second Amendment right recognized in *Heller*, making it fully enforceable against the states. 561 U.S. 742, 791 (2010).

In the wake of these decisions, almost all the Courts of Appeals, including the Eleventh Circuit, employed a "two-step" framework for analyzing Second Amendment challenges to firearm regulations. *See, e.g.*, *United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017).[3] Under this framework, a court first considers whether a challenged regulation burdens "conduct within the scope of the Second Amendment as historically understood[.]" *Id.* If the answer is yes, the second step is to "apply an appropriate form of means-end scrutiny[,]" which involves weighing the burden on the Second Amendment right against the government's interest in regulating the conduct. *Id.*

In *Bruen*, however, the Court rejected this approach, finding that the two-step framework is "one step too many." 142 S. Ct. at 2127. The court held that:

> Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history. But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.

*Id.* In light of *Bruen*, when analyzing Second Amendment challenges to firearm regulations, courts must now first determine whether "the Second Amendment's plain text covers an individual's

---

[3] *See also Gould v. Morgan*, 907 F.3d 659, 668 (1st Cir. 2018); *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 253 (2d Cir. 2015); *United States v. Boyd*, 999 F.3d 171, 185 (3d Cir. 2021); *Kolbe v. Hogan*, 849 F.3d 114, 132 (4th Cir. 2017) (en banc); *Nat'l Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 194 (5th Cir. 2012); *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012); *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019); *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013); *United States v. Reese*, 627 F.3d 792, 801 (10th Cir. 2010); *Heller v. District of Columbia*, 670 F.3d 1244, 1252 (D.C. Cir. 2011) ("*Heller II*").

conduct[.]" *Id.* at 2129-30. If so, "the Constitution presumptively protects that conduct[,]" and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*

Importantly, although the Supreme Court rejected the predominant framework for analyzing Second Amendment cases, it did not overrule *Heller* or *McDonald*. *See id.* at 2127, 2129-30. Rather, it found that the lower courts had misinterpreted those precedents when they applied means-end scrutiny in the Second Amendment context. *Id.* Indeed, in the Court's view, *Bruen* did not impose a *new* standard but rather *clarified* the standard already announced. *Id.* So, in its *Bruen* decision the Court emphasized that "*Heller* and *McDonald* expressly rejected the application of any 'judge-empowering interest-balancing inquiry that asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other governmental interests.'" *Id.* at 2129 (quoting *Heller*, 554 U.S. at 634) (cleaned up). This analysis leads inexorably to the conclusion that, to the extent a pre-*Bruen* decision limits its holding to step one's historical analysis and avoids any prohibited means-end scrutiny, such a decision's validity is unaltered by *Bruen*.

### B. The *Rozier* decision upholding the constitutionality of § 922(g)(1) remains good law after *Bruen*.

Under the prior panel precedent rule, an Eleventh Circuit holding is binding "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by [the Eleventh Circuit] sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). In order to operate to overrule Eleventh Circuit precedent, a Supreme Court ruling must be "clearly on point." *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003) (per curiam); *NLRB v. Datapoint Corp.*, 642 F.2d 123, 129 (5th Cir. Unit A Apr. 1981) ("Without a clearly contrary opinion of the Supreme Court or of this court sitting en banc, we cannot overrule

4

a decision of a prior panel of this court").[4] Courts "are not at liberty to disregard binding case law that is so closely on point and has been only weakened, rather than directly overruled, by the Supreme Court." *Fla. League of Pro. Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 462 (11th Cir. 1996).

In *Rozier*, which was decided after *Heller* but before *Bruen*, the Eleventh Circuit rejected a Second Amendment Challenge to § 922(g)(1). 598 F.3d at 769-71. Defendant argues that *Rozier* was overruled by *Bruen*, and therefore he claims the Indictment must be dismissed because the government did not "demonstrate that [§ 922(g)(1)] is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126; (Doc. # 19). The court disagrees. For the reasons explained below, the court determines that *Rozier* was not "overruled or undermined to the point of abrogation" by *Bruen*, and therefore it is binding on this court. *See Archer*, 531 F.3d at 1352.

First, the Eleventh Circuit did not rely on means-end scrutiny to reach its holding in *Rozier*, nor did it apply the prohibited two-step analysis. *See Rozier*, 598 F.3d at 769-71. Nowhere in the opinion is the two-part test even mentioned. *See id.* In fact, the Eleventh Circuit did not formally adopt that now-rejected framework until two years later, in *GeorgiaCarry.Org, Inc. v. Georgia*. 687 F.3d 1244, 1260 n.34 (11th Cir. 2012) ("*GeorgiaCarry.Org I*") ("Like our sister circuits, we believe a two-step inquiry is appropriate."); *see GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1324 (11th Cir. 2015) ("*GeorgiaCarry.Org II*") (noting that the Eleventh Circuit used the two-step inquiry for the first time in *GeorgiaCarry.Org I*).

Rather than applying means-end scrutiny, the *Rozier* panel relied on language in *Heller* limiting the Second Amendment right to "law-abiding citizens." *See Rozier*, 598 F.3d at 770. In

---

[4] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981 constitute binding precedent in the Eleventh Circuit).

*Rozier*, the court first pointed to *Heller*'s warning that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* (quoting *Heller*, 554 U.S. at 626). It next observed that the Supreme Court qualified its holding in *Heller* by stating, "[a]ssuming that Heller *is not disqualified* from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home ." *Id.* (quoting *Heller*, 554 U.S. at 635) (emphasis added in *Rozier*). From this, the court readily concluded:

> This indicates that the first question to be asked is not whether the handgun is possessed for self-defense or whether it is contained within one's home, rather the initial question is whether one is *qualified* to possess a firearm. In Rozier's case, the most relevant modifier, as to the question of qualification, is "felon."

*Id.* (emphasis in original).

Finally, the *Rozier* panel cited *Heller*'s clear admonition that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . .". *Id.* at 771 (quoting *Heller*, 554 U.S. at 626). As the Eleventh Circuit reasoned, "[t]his language suggests that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment" and concluded that § 922(g)(1) is constitutional. *Id.* ("Thus, statutory restrictions of firearm possession, such as § 922(g)(1), are a constitutional avenue to restrict the Second Amendment right of certain classes of people.").

Turning next to Defendant's arguments in this case, he contends that the *Rozier* decision "was grounded in the interest-balancing, means-ends analysis that has now been abrogated by *Bruen*." (Doc. # 22 at 12). Defendant hinges this argument on two sentences of the Rozier decision:

> Rozier's Second Amendment right to bear arms is not weighed in the same manner as that of a law-abiding citizen, such as the appellant in *Heller*. While felons do not forfeit their constitutional rights upon being convicted, their status as felons substantially affects the level of protection those rights are accorded.

*Rozier*, 598 F.3d at 771; (Doc. # 22 at 12). The court is not persuaded that these two sentences constitute means-end balancing, especially when they are viewed in proper context. Indeed, Defendant himself concedes that "the Rozier decision did not explicitly engage in interest-balancing." (Doc. # 22 at 12). If the *Rozier* decision did not explicitly engage in interest-balancing, then it was not clearly overruled by *Bruen*, and thus it remains binding on this court. *See Archer*, 531 F.3d at 1352.

Alternatively, Defendant argues that, even if the *Rozier* decision was not based on means-end scrutiny, it is nonetheless invalid because it relied exclusively on dicta from *Heller*. (Doc. # 22 at 2-8). Although the Court described prohibitions on the possession of firearms by felons as "presumptively lawful" in *Heller*, it acknowledged that it did "not undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment[.]" *Heller*, 554 U.S. at 626, 627 n.26). According to Defendant, reliance on *Heller*'s dicta is no longer appropriate in light of *Bruen*'s command that "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127; (Doc. # 19 at 4-5). Thus, Defendant contends that *Bruen* "demands a fresh look at 18 U.S.C. § 922(g)(1) through the lens of the Second Amendment's text, history, and tradition." (Doc. # 19 at 4-5). But this argument is unpersuasive for several reasons.

First, the Eleventh Circuit has explicitly sanctioned reliance on this portion of *Heller*. In *Rozier*, the court rejected the defendant's argument that it should disregard *Heller*'s "presumptively lawful" language as mere dicta, stating:

> First, to the extent that this portion of *Heller* limits the Court's opinion to the possession of firearms by *law-abiding* and *qualified* individuals, it is not dicta. Second, to the extent that this statement is superfluous to the central holding of *Heller*, we shall still give it considerable weight.

*Rozier*, 598 F.3d at 771 n.6 (citations omitted).

7

Second, subsequent Supreme Court opinions, including *Bruen*, have indicated approval of the *Heller* dicta. For example, in *McDonald*, which was decided after *Rozier*, the Court reaffirmed *Heller*, stating: "We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons . . . We repeat those assurances here." *McDonald*, 561 U.S. at 786 (quoting *Heller*, 554 U.S. at 626).

This limiting language is echoed in *Bruen* as well. In the opening line of the *Bruen* opinion, the Court describes *Heller* and *McDonald* as recognizing "that the Second and Fourteenth Amendments protect the right of an ordinary, *law-abiding citizen* to possess a handgun in the home for self-defense." *Bruen*, 142 S. Ct. at 2122 (emphasis added). Throughout its decision in *Bruen*, the Court confines its holding to law-abiding citizens. *See id.* Indeed, the Court mentions "law-abiding" citizens no less than eleven times in the majority opinion. *See, e.g., id.* at 2131 ("The Second Amendment . . . 'surely elevates above all other interests the right of *law-abiding, responsible citizens* to use arms' for self-defense.") (emphasis added) (quoting *Heller*, 554 U.S. at 635); *id.* at 2134 ("It is undisputed that petitioners Koch and Nash—two ordinary, *law-abiding, adult citizens*—are part of 'the people' whom the Second Amendment protects.") (emphasis added); *id.* at 2156 ("New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents *law-abiding citizens* with ordinary self-defense needs from exercising their right to keep and bear arms.") (emphasis added).

Both of the *Bruen* concurrences also explicitly cite *Heller*'s limiting language. *Id.* at 2157 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or [*McDonald*] about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 2161 (Alito, J., concurring) ("*Heller* correctly recognized that the Second Amendment codifies the right of ordinary, *law-abiding* Americans to protect themselves from lethal violence by possessing and, if

8

necessary, using a gun.") (emphasis added); *id.* (Kavanaugh, J., concurring) (stating that "the Second Amendment allows a 'variety' of gun regulations" and quoting *Heller*'s statement that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons").

Finally, as the Eleventh Circuit acknowledged in *Rozier*, to the extent the limiting statements in *Heller*, *McDonald*, and *Bruen* are dicta, they are Supreme Court dicta and are entitled to substantial deference from this court. *See Rozier*, 598 F.3d at 771 n.6 (citing *Peterson v. BMI Refractories*, 124 F.3d 1386, 1392 n.4 (11th Cir. 1997) ("[D]icta from the Supreme Court is not something to be lightly cast aside.")); *see also United States v. City of Hialeah*, 140 F.3d 968, 974 (11th Cir. 1998) ("Even though that statement by the Supreme Court . . . was dictum, it is of considerable persuasive value, especially because it interprets the Court's own precedent."); *United States v. Becton*, 632 F.2d 1294, 1296 n.3 (5th Cir. 1980)[5] ("We are not bound by dicta, even of our own court . . . Dicta of the Supreme Court are, of course, another matter."). *But see Reynolds v. Behrman Cap. IV L.P.*, 988 F.3d 1314, 1322 (11th Cir. 2021) ("Giving the Supreme Court's dicta the respect and consideration it is due, . . . we choose to go in a different direction.").

Here, Defendant asks this court to disregard *Heller's* assurance that "longstanding prohibitions on the possession of firearms by felons" are "presumptively lawful," even though the Eleventh Circuit has given it "considerable weight," and the Supreme Court has cited it approvingly. *Heller*, 554 U.S. at 626; *see Rozier*, 598 F.3d at 771 n.6; *McDonald*, 561 U.S. at 786; *Bruen*, 142 S. Ct. at 2161 (Kavanaugh, J., concurring). Defendant invites the court to interpret *Bruen* as condemning any reliance on *Heller*'s alleged dicta, in spite of ample language in that decision limiting the scope of the Second Amendment right to "law abiding" citizens. *See Bruen*,

---

[5] *See supra* note 4.

142 S. Ct. at 2131-56. That invitation clearly misses the mark. For the reasons discussed above, the *Bruen* decision did not overrule *Rozier*, nor did it undermine that decision to the point of abrogation. Thus, because the Eleventh Circuit decided that the *Heller* dictum is persuasive, it is for the Eleventh Circuit to decide whether to depart from that holding. *Rozier* is still good law, and this court must apply it. Section § 922(g)(1) is constitutional.

**IV.     Conclusion**

For the foregoing reasons, the Motion to Dismiss (Doc. # 19) is due to be denied. A corresponding Order will be entered.

**DONE** and **ORDERED** this December 13, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE